(C. D. 1346)

GILLETTE SAFETY RAZOR CO. *v.* UNITED STATES

## United States Customs Court, First Division

(Decided July 13, 1951)

*Joseph F. Lockett* and *Walter E. Doherty, Jr.*, for the plaintiff.
*David N. Edelstein*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.
*Eugene R. Pickrell* as *amicus curiae*.

Before OLIVER, COLE, and MOLLISON, Judges; MOLLISON, J., dissenting

OLIVER, Chief Judge: Plaintiff herein seeks to recover certain monies claimed to have been illegally exacted on certain merchandise imported from England and entered at the port of Boston. The merchandise is described on the invoices as 4,942 "reels Rayophane transparent cellulose film, heat sealing moistureproof 2¾₆" wide—3" centres." It was classified for duty under paragraph 31 (b) (1) of the Tariff Act of 1930 at 40 cents per pound under the provision for "All compounds of cellulose * * * In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms * * * not made into finished or partly finished articles * * *." It is claimed properly dutiable under paragraph 31 (c) providing for "Sheets, bands, and strips (whether known as cellophane or by any other name whatsoever), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness * * * by solidification into sheets, bands, or strips, 45 per centum ad valorem," or under paragraph 31 (b) (2) covering "All compounds of cellulose * * * made into finished or partly finished articles * * *" at 50 per centum ad valorem (as amended by the trade agreement with the United Kingdom, T. D. 49753). Plaintiff also alternatively claims that if not dutiable under paragraph 31 (c) or paragraph 31 (b) (2), that it is properly dutiable under the provisions of paragraph 1409 for "Wrapping paper not specially provided for," at the rate of 25 per centum ad valorem (as amended by the provisions of the trade agreement with Sweden, T. D. 47785, and the trade agreement with Finland, T. D. 48554). Plaintiff also claims that the merchandise is properly dutiable under paragraph 31 (c) or paragraph 1409, by virtue of the similitude clause in paragraph 1559, or under the provisions of paragraph 1558 at 20 per centum ad valorem for "* * * articles manufactured, in whole or in part, not specially provided for."

The merchandise consists of transparent cellulose film manufactured in England under the trade name "Rayophane," but which it is conceded is similar in all material respects to what is known in this country as "Cellophane." For the purpose of simplifying our discussion herein, the product will be referred to hereinafter as "Cellophane," as it is cellophane by another name. As imported, this

merchandise consists of rolls of "Cellophane" 2⅞₆ inches wide on a paper core 3 inches in diameter, the entire roll measuring about 1 foot in diameter. The "Report of the Collector on Protest," dated June 3, 1949, in connection with this importation, filed with the papers herein, contains the following statement:

The Appraiser at this port reports, under date of Jan. 23, 1948, as follows: "Invoices the subject of protest, cover cellulose, pyroxylin coated, film, exceeding one inch in width, not exceeding 3/1000 of one inch in thickness. These reels were classified at 40¢ per lb. Par. 31 (b) (1) in accordance with Bureau of Customs letter 418.3, 4/15/48." [Obviously, this should be 1947.] Under date of Apr. 7, 1948, "The Bureau has been consistent in classifying sheets of cellophane cut from larger sheets, as in this case, at 40¢ per lb. Par. 31 (b) (1). * * *

Attached to the consular invoice covered by entry 4491 in the present protest is a "Laboratory Report" signed by Louis Tanner, chief chemist at the port of Boston, reading as follows:

The sample is a pyroxylin-coated cellophane strip exceeding one inch in width, not exceeding three one-thousandths of one inch in thickness.

No oral testimony was introduced into this record, the case being submitted upon a written stipulation entered into between counsel for the litigants. This somewhat lengthy stipulation, together with the sample (plaintiff's illustrative exhibit 1) and the reports heretofore referred to, constitutes the entire record. This stipulation of fact in condensed form sets forth the details of paragraph 31 (b) (1), under which this material was classified, and sets forth the various claims hereinabove referred to under which plaintiff claims this merchandise to be properly dutiable. It stipulates that this material, known by the trade name "Rayophane" is, in all material respects, similar to the product manufactured in this country by Du Pont under the trade name of "Cellophane." It is conceded that it is imported in the form of coiled bands of this "Cellophane," 2⅞₆ inches wide and less than 0.0012 inch in thickness, wound on a pressed paper core or reel, 3 inches in diameter, the entire coil being about 1 foot in diameter.

This material was manufactured by the producer, British Rayophane, Ltd., in accordance with specifications drawn up by the plaintiff and "was designed to fit on a wrapping machine for wrapping razor blade tucks * * *." This machine cut or stamped the band of "Rayophane" into shapes used as wrappers for razor-blade tucks. The shape into which it was cut or stamped was in the form of a cross, the parts of the cross extending above, below, and to each side of the area where the perpendicular and horizontal members of the cross would touch, being folded inward, forming a rectangular container, or envelope, which enclosed the razor-blade tucks. No further manipulation was made of the imported merchandise, the wrapping process having been completed. The said merchandise was used entirely by the plaintiff in its condition at the time of importation for wrapping

razor-blade tucks, and the plaintiff did not at any time resell it nor was it used for any other purpose or in any other manner whatsoever.

The imported "Rayophane" was a manufacture of cellulose hydrate. It was not a compound containing pyroxylin, nor were there any other cellulose esters or ethers present therein. The component material of chief value was the regenerated cellulose which was obtained from the cellulose hydrate.

In the Tariff Act of 1922, paragraph 31 (predecessor of the present paragraph 31) provided for—

Compounds of pyroxylin, * * * or of cellulose, by whatever name known * * * in * * * sheets * * * or other forms, and not made into finished or partly finished articles, 40 cents per pound; made into finished or partly finished articles, of which any of the foregoing is the component material of chief value, 60 per centum ad valorem.

In the 1930 act, this provision for compounds of cellulose was broken up into the provisions now found in paragraph 31 (b) (1) and (b) (2), and paragraph 31 (c) as follows:

PAR. 31. (b) All compounds of cellulose * * *:

(1) In blocks, sheets, rods, tubes, powder, flakes, briquets, or other forms, * * * not made into finished or partly finished articles, 40 cents per pound, * * *.

(2) made into finished or partly finished articles * * *, not specially provided for, 60 per centum ad valorem [rate amended to 50 per centum ad valorem by trade agreement with the United Kingdom, T. D. 49753].

PAR. 31. (c) Sheets, bands, and strips (whether known as cellophane or by any other name whatsoever), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness, made by any artificial process from cellulose, * * * by solidification into sheets, bands, or strips, 45 per centum ad valorem.

Under the 1922 act, "Cellophane" was not referred to by name. Paragraph 31 (c) of the 1930 act specifically provides for "Sheets, bands, and strips (whether known as cellophane or by any other name whatsoever)." The imported material now before us is "Cellophane" known by another name (Rayophane). As imported, it is in the form of bands or strips in rolls. It comes within the dimension limits as set forth in paragraph 31 (c) in that it exceeds 1 inch in width and does not exceed 0.003 inch in thickness. Paragraph 31 (c) concludes with the words "made * * * by solidification into sheets, bands, or strips, * * *." If the language used in paragraph 31 (c) was not intended to cover the narrow rolls of cellophane now before us, it is difficult to conceive language which would more specifically describe the intent of Congress. The master rule of construction in customs litigation has always been to ascertain the intent of Congress. (*United States et al.* v. *American Trucking Associations, Inc., et al.*, 310 U. S. 534, 542.) The tariff acts are presumed to be written in the language of commerce (*Hummel Chemical Co.* v. *United States,*

29 C. C. P. A. 178, C. A. D. 189). We understand this to be the language comprehensible by the ordinary businessman. Congress apparently intended to provide for the material known in this country as "cellophane," whether imported in the form of "sheets, bands, or strips." Congress provided that these sheets, bands, or strips shall be wider than 1 inch and not more than 0.003 inch in thickness. Beyond these minor restrictions, Congress has made it clear that "Cellophane" (Rayophane) shall be dutiable at 45 per centum ad valorem if imported in "sheets, bands, or strips" (no limit on lengths or forms of packing), providing only it be not less than 1 inch in width and not thicker than 0.003 inch. Viewed from the standpoint of commercial common sense, the imported material comes squarely within these provisions. Paragraph 31 (c) starts with the words "Sheets, bands, and strips" and concludes with "made by * * * solidification into sheets, bands, or strips * * *." Defendant contends that the imported rolls of material are not solidified into the strip or band form in which imported but were cut from wider sheets and for that reason are not covered by said paragraph 31 (c). With such a construction we are not in sympathy. The cellophane was brought into being by a process of solidification and the fact that it may not have been originally solidified into the dimensions of the imported rolls ($2\frac{1}{16}''$) is not controlling. To hold otherwise would be to assess one rate of duty on a wide sheet, as it comes off the machine, and another rate of duty, on the same material, if the sheet were trimmed, or cut, as here, into narrow strips or bands. We do not believe Congress contemplated any such hypertechnical construction to be placed on the language employed.

Plaintiff, in support of its contention that the narrow rolls of cellophane are not properly dutiable as assessed under paragraph 31 (b) (1) (which contains the proviso "not made into finished or partly finished articles"), maintains that the imported rolls, being made to specifications of the importer as to width, thickness, and size of rolls, are finished or at least partly finished articles and, therefore, are specifically excluded from said paragraph 31 (b) (1). We do not agree with this contention. That it is made to specification is not controlling. It would be difficult to conceive of any businessman placing an order for a quantity of "Cellophane" (Rayophane). Such an order would be utterly meaningless. It would naturally have to include specifications as to width, thickness, size of sheets or rolls, etc. That, as imported, these rolls of material were intended for and actually used exclusively on a particular wrapping machine for wrapping a specific product does not convert the imported product from cellophane in bands or strips to an article made from cellophane. Rolls of waxed paper, 8'' in diameter, $3\frac{1}{2}''$ wide, printed with the name

of the candy to be wrapped, designed to be consumed on what was described as a "Rose Wrapping Machine," were before our appellate court in *C. S. Allen Corp.* v. *United States,* 38 C. C. P. A. 48, C. A. D. 438. The court there said:

. Expressed in simple terms, the exact issue, as the case is presented to us, is whether the printing on the imported material so changed its status, within the meaning of the customs law, that it ceased to be paper and became an article "made of paper," as held by the trial court. * * *

\* \* \* \* \* \* \*
* * * the trial court erred in holding that the printing on the paper converted it into articles of paper * * *.

The fact that the rolls of cellophane before us are used on a wrapping machine to wrap a specific product, does not change the status of this merchandise from "Cellophane" in bands or strips to an article made therefrom. For these reasons, plaintiff's claim to classification under paragraph 31 (b) (2) as being compounds of cellulose "made into finished or partly finished articles" is overruled. (See also *Birn & Wachenheim* v. *Du Pont Cellophane Co. (Inc.),* 17 C. C. P. A. 122, 127, T. D. 43454.)

For reasons set forth herein and in view of our conclusion, plaintiff's claim to classification under paragraph 1409, Tariff Act of 1930, as modified, *supra,* as "Wrapping paper" is overruled. Plaintiff's claim to classification as a nonenumerated manufactured article under paragraph 1558 is likewise overruled.

For reasons hereinbefore set forth, the classification of the collector is overruled and the plaintiff's claim that the merchandise in question is dutiable under paragraph 31 (c), Tariff Act of 1930, as "Sheets, bands, and strips (whether known as cellophane or by any other name whatsoever), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness, * * * by solidification into sheets, bands, or strips," at 45 per centum ad valorem is sustained. In all other respects the protest is overruled.

Judgment will issue accordingly.

### DISSENTING OPINION

MOLLISON, Judge: I am unable to agree with the conclusion of the majority that the merchandise at bar is entitled to classification under the provisions of paragraph 31 (c) of the Tariff Act of 1930, for the reason that I do not believe that a *prima facie* case in favor of such classification has been established.

The full text of that provision reads as follows:

PAR. 31. (c) Sheets, bands, and strips (whether known as cellophane or by any other name whatsover), exceeding one inch in width but not exceeding three one-thousandths of one inch in thickness, made by any artificial process from cellulose, a cellulose hydrate, a compound of cellulose (other than cellulose

acetate), or a mixture containing any of the foregoing, by solidification into sheets, bands, or strips, 45 per centum ad valorem.

A careful examination of the entire record, including the written stipulation of counsel upon which the case was submitted for decision, fails to reveal anything which could be considered as evidence or would dispense with the need of producing evidence on the question of whether the bands or strips in issue were "made by any artificial process from * * * cellulose hydrate * * * by solidification into * * * bands or strips." As there is no evidence in the record concerning the commercial production of bands or strips of cellophane made as described in paragraph 31 (c), *supra*, there is nothing upon which the ultimate fact that the merchandise in issue was "made by [an] artificial process from * * * cellulose hydrate * * * by solidification into * * * bands or strips" can be determined.

It is stipulated that the bands in issue were "a manufacture of cellulose hydrate" and the majority has obviously accepted this as establishing that such bands were "made by [an] artificial process from * * * cellulose hydrate." The statutory language is peculiar in its wording, and it seems to me that had Congress intended such language to be the equivalent of "manufactured of cellulose hydrate" it would have unmistakably so indicated.

Furthermore, there is nothing in the record which establishes that the merchandise in issue was made into bands "by solidification." This is a necessary element of proof under paragraph 31 (c), and such proof is totally lacking in the record before us.

Upon this record, I am in agreement with the holding of the majority that the merchandise involved is not classifiable under the provision in paragraph 31 (b) (2) for "compounds of cellulose * * * made into finished or partly finished articles * * * not specially provided for," as alternatively claimed by the plaintiff. The record shows that the merchandise is merely a material with no element of dedication such as would be necessary to entitle it to classification as a finished or partly finished article.

I am likewise in accord with the determination of the majority that paragraphs 1409 and 1558 have no application to the merchandise at bar. In my view judgment should issue overruling all of the protest claims.